

KANE KESSLER, P.C.
600 THIRD AVENUE
NEW YORK, NEW YORK 10016
TEL 212.541.6222
FAX 212.245.3009
WWW.KANEKESSLER.COM
jsabin@kanekessler.com

December 15, 2021

<u>Via ECF</u>

Hon. Vincent L. Briccetti
United States District Judge
United States District Court, Southern District of New York
United States Courthouse
300 Quarropas Street, Room 630
White Plains, NY 10601

      Re: <u>*Prorokovic et al v. United Property & Casualty Insurance Co.* No. 7:21-cv-01998-VB</u>

Dear Judge Briccetti:

  We represent Plaintiffs in the above-referenced action, and we write pursuant to Your Honor's Individual Rule 2.B(i) and Local Rule 37.2 to request an informal conference with the Court to discuss Defendant's failure to produce relevant discovery. Defendant has asserted the frivolous position that virtually its entire claim file, underwriting guidelines and communications with attorneys and non-attorneys pre-dating its declination decision, are protected from disclosure under the attorney-client and work product privileges. The parties have met and conferred in good faith on multiple occasions but have reached an impasse.[1]

I. <u>Factual Background</u>

  On or about August 14, 2020, Defendant United Property & Casualty Insurance Co. ("UPC") issued a homeowner's insurance policy to Plaintiffs (the "Policy") for premises located in New City, New York (the "Premises"). On or about September 17, 2020, Plaintiffs closed on their purchase of the Premises from the previous owner, non-party Craig Rubenstein ("Rubenstein").

  On November 5, 2020, a fire occurred at the Premises, resulting in the total destruction of the dwelling, other structures, as well as the personal property and the contents located in the dwelling. Plaintiffs promptly notified UPC about the fire and resulting loss in accordance with the provisions of the Policy. Pursuant to the terms of the Policy, UPC was obligated to pay Plaintiffs the Policy limits of $423,000 for damage to the dwelling, $126,900 for damage to the personal property

---

[1] In addition to written correspondence regarding Defendant's failure to produce, the parties had telephonic meet and confers on or around November 4, 2021 and December 6, 2021.



December 15, 2021
Page 2

and contents located in the dwelling, and $8,460 for damage to other structures located on the Premises. UPC was also obligated to pay Plaintiffs for damages resulting from loss of use of the Premises in an amount exceeding of $42,300.

Although Plaintiffs complied with all of their obligations pursuant to the terms and conditions of the Policy, UPC disclaimed all liability and insurance coverage to Plaintiffs by letter dated January 19, 2021. UPC's denial of insurance coverage was predicated upon the following false allegations, which were claimed to be contrary to certain checked box statements made in Plaintiffs' form insurance application:

1. The roof is more than 20 years old.
2. The Premises were under construction prior to and at the time Plaintiffs signed the application for insurance and when the Policy was issued by UPC.
3. The Premises were not "owner occupied" at the time that the application for insurance was signed.

Each of these bases for declination of coverage and/or rescission of the Policy is without merit and made in bad faith.[2]

## II.   UPC's Failure to Produce Relevant Discovery

Conspicuously absent from UPC's paltry production (2 single PDFs containing 743 and 12 pages, respectively) are any internal emails, correspondence memoranda or reports concerning UPC's investigation, cancellation or denial of the claim. Nor has UPC produced *any* documentation concerning its underwriting practices, such as underwriting manuals, policies, or guidelines.[3] UPC's position that these documents are privileged is without basis.[4]

---

[2] Upon information and belief, Rubenstein, the former owner of the Premises, will testify that the roof was not more than 20 years old at the time of the sale to Plaintiffs and his prior unsworn oral statements to UPC's insurance investigator to the contrary were mistaken and inaccurate. The MLS listing for the Premises also states that the roof was last upgraded in 2001. There is no dispute that construction on the Premises did not begin until *after* the closing. Finally, the Premises were occupied by Rubenstein, who was the "owner" of the Premises at the time the application for insurance was signed by Plaintiffs, and it had been occupied by Plaintiffs and their children since the closing of the sale and through the date of the fire.

[3] UPC's production consists almost entirely of multiple duplicate copies of documents already in Plaintiffs' possession such as the insurance application, the Policy, pre-commencement correspondence between the parties and the summons and complaint.

[4] UPC's privilege log can be provided to the Court in advance of a pre-motion conference. It is not included herein in order to comply with the page limitations under the Court's Individual Rules.



December 15, 2021
Page 3

### A.   Communications with Outside Claims Counsel between 11/17/20-1/19/21

UPC claims that it retained outside counsel to investigate Plaintiffs' claim on or about November 17, 2020.[5] UPC apparently has withheld all responsive documents after this date on privilege/work product grounds, even though Defendant did not disclaim coverage until January 19, 2021. However, New York law is clear that such documents are discoverable.

"Where, as here, it is alleged that the insurer has breached a duty to its insured, the insurer may not use the attorney-client or work product privilege to shield from disclosure material relevant to the insured's bad faith action." *Woodson v. Am. Tr. Ins. Co.,* 280 AD2d 328, 328-29 (1st Dept 2001).[6] "Documents prepared in the ordinary course of an insurance company's investigation to determine whether to accept or reject coverage and to evaluate the extent of a claimant's loss are not privileged, and, therefore, discoverable. In addition, such documents do not become privileged merely because an investigation was conducted by an attorney." *Brooklyn Union Gas Co. v. Am. Home Assur. Co.,* 23 AD3d 190, 191 (1st Dep't 2005). *See also Advanced Chimney, Inc. v. Graziano*, 153 AD3d 478, 480 (2d Dept 2017) ("Reports prepared by insurance investigators, adjusters, or attorneys before the decision is made to pay or reject a claim are not privileged and are discoverable, even when those reports are mixed/multi-purpose reports, motivated in part by the potential for litigation with the insured."); *Great Am. Ins. Co. of New York v. Castleton Commodities Intern. LLC,* 15 CIV. 3976, 2015 WL 6437397, at *2 (SDNY Oct. 15, 2015) ("The Court holds that in the context of insurance companies' work product assertions, if a declination decision has been made, documents subsequently drafted are presumed to have been created in anticipation of litigation; *if the claim has not yet been rejected the documents are part of the claim investigation process and are not work product.*") (emphasis added).

Defendant's semantic argument that its pre-declination correspondence with (and without) counsel was not made in the "ordinary course of business" because it purportedly concerned "rescission" and not a "declination" of coverage, is incorrect. The theory upon which an insurer denies coverage, whether because the loss falls outside the policy or because the policy is rescinded, is immaterial. In either case, the insurer is performing its core business function of determining whether to accept or reject coverage and, consequently, such communications are discoverable. *See Advanced Chimney, Inc. v. Graziano*, 153 A.D.3d 478 (2d Dep't 2017) (communications between insurer and law firm during investigation of claim was

---

[5] Email from M. Hensley to R. Kahn, Nov. 4, 2021 (on file)
[6] "New York law governs the applicability of the attorney-client privilege" in federal diversity cases. *Roc Nation LLC v. HCC Intl. Ins. Co., PLC*, 19 CIV. 554 (PAE), 2020 WL 1970697, at *2 (S.D.N.Y. Apr. 24, 2020).


December 15, 2021
Page 4

"not primarily and predominantly of a legal character" and thus subject to disclosure even though insurer rescinded the policy based on that investigation); 2 Couch on Ins. § 31:10 (rescission "*frequently* arises where the insurer has discovered misrepresentations in the application for insurance") (emphasis added). Defendant has not identified any authority holding otherwise.

Even if communications related to rescission of the Policy are privileged (which they are not), UPC did not deny coverage solely on that basis. In its January 19, 2021 letter, UPC stated that Plaintiffs' allegedly "materially false statements and/or misrepresentations of material fact constitute *independent violation* of the policy provisions and compel a *denial of coverage* for your claim." (emphasis added). Since the communications between UPC and counsel, as well as internal UPC communications relating to the claim, undeniably concern UPC's disclaimer of coverage and rescission of the policy, they are discoverable.

B. **Communications Prior to 11/17/20 *without* Attorneys**

Incredibly, Defendant has also withheld hundreds of pages of documents and communications, *including the entire underwriting file*, which *predate* the alleged retention of outside claims counsel on November 17, 2020. Not surprisingly, attorneys are not included on *any* of these communications. There is clearly no basis to withhold such documents and communications.

C. **Underwriting Guidelines**

Defendant has refused to produce its underwriting manuals, underwriting bulletins and underwriting guidelines based upon attorney-client privilege and work product grounds. Underwriting guidelines are clearly not privileged. In fact, Defendant *must* produce its underwriting guidelines in order to establish the materiality of Plaintiffs' alleged misrepresentations. *Neiditch v. William Penn Life Ins. Co. of New York,* 177 AD3d 754, 755 (2d Dept 2019) ("To establish materiality as a matter of law, the insurer must present documentation concerning its underwriting practice, such as underwriting manuals, bulletins, or rules pertaining to similar risks, which show that it would not have issued the same policy if the correct information had been disclosed in the application"); N.Y. Ins. Law § 3105(b) ("In determining the question of materiality, evidence of the practice of the insurer which made such contract with respect to the acceptance or rejection of similar risks shall be admissible."). "Conclusory statements by insurance company employees, unsupported by documentary evidence, are insufficient to establish materiality as a matter of law." *Parmar v. Hermitage Ins. Co.*, 21 AD3d 538, 540-41 (2d Dept 2005).

Defendant should be ordered to produce immediately all underwriting manuals, bulletins, guidelines, policies, and procedures or, alternatively, an order



December 15, 2021
Page 5

should be entered precluding Defendant from offering any evidence that any alleged misrepresentations by Plaintiffs were material.

### D. Post 1/19/21 Documents and Communications

Although communications with counsel after Defendant's disclaimer of coverage on January 19, 2021 are presumptively privileged, Defendant has withheld purely internal communications subsequent to January 19, 2021 without any attorneys. Defendant should be required to produce those documents since they are not protected by the attorney-client privilege or work product doctrines.

### E. Defendant's Privilege Log is Inadequate and Should be Supplemented[7]

Defendant's privilege log does not allow Plaintiffs to "make an intelligent determination about the validity" of Defendant's privilege designations. *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.,* 297 F.R.D. 55, 59 (S.D.N.Y. 2013). The log frequently does not identify individual recipients of emails and does not indicate which recipients of emails are attorneys. The descriptions of the withheld documents are vague and nonspecific and give no indication how the withheld material is privileged or attorney work product (E.g. "Email about claim," "SIU UPC Case Information," "Accurint Person Search Reports, "Authority Request," "Email with Attachment," "E-mails").[8]

Respectfully submitted,

**KANE KESSLER, P.C.**

By: */s/ Jonathan M. Sabin*
    S. Reid Kahn
    Jonathan M. Sabin
600 Third Avenue
New York, NY 10016
(212) 541-6222
rkahn@kanekessler.com
jsabin@kanekessler.com

*Attorneys for Plaintiffs*

---

[7] Defendant was required to provide a privilege log on September 27, 2021 when it made its document production but did not produce it until December 13 –after the undersigned repeatedly demanded its production on October 4, October 21, October 25, November 13, November 22, November 29, and December 6.

[8] UPC has also logged numerous documents that are clearly not privileged such as the Reservation of Rights letter to Plaintiffs, internet webpages, invoices and "Facebook searches." Such documents should be produced.