UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
DAJAN PROROKOVIC and DINA
PROROKOVIC,

                           Plaintiffs,

              -against-

UNITED PROPERTY & CASUALTY
INSURANCE COMPANY,

                           Defendant.
------------------------------------------------------X

**MEMORANDUM DECISION
AND ORDER**

21 Civ. 1998 (VB) (PED)

**PAUL E. DAVISON, U.S.M.J.**

      This diversity case arises from a November 5, 2020 fire at plaintiffs' premises. That same day, plaintiffs claimed a total loss under their homeowners insurance policy issued by defendant. Defendant initiated an investigation and, on January 19, 2021, it denied plaintiffs' insurance claim and rescinded the policy on the ground that plaintiffs made material misrepresentations and/or false statements on the insurance application. Defendant refunded policy premiums paid to date via direct deposit into plaintiffs' bank account.

      This case is before me for general pretrial supervision pursuant to an Order of Reference dated January 13, 2022. Dkt. #43. This Memorandum Decision and Order addresses two specific discovery disputes which were pending as of, and discussed during, my initial on-the-record telephone conference with the parties on February 2, 2022.[1] *See* Dkt. #41, #46-48, #52; Minute Entry, 02/02/2022.

A. <u>Defendant's Communications with Outside Counsel</u>

      Plaintiffs seek to compel disclosure of responsive communications between defendant

---

[1] Counsel resolved a third dispute concerning defendant's ESI search. Dkt. #53.

and its outside counsel, from November 17, 2020 (when outside counsel was retained) through January 19, 2021 (when coverage was disclaimed). Defendant asserts that these communications are protected by the attorney-client privilege because:

> they relate to the retention of outside counsel for legal advice relating to the investigation and potential rescission of a claim. This is fundamentally different than advice relating to the processing of a claim, or the denial of a claim, in the ordinary course of business. UPC is in the business of processing claims, but is not in the business of rescinded policies.

Dkt. #47, at 1 (ECF pagination).

"New York law governs the applicability of the attorney-client privilege in this diversity case." *Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, No. 19 Civ. 554, 2020 WL 1970697, at *2 (Apr. 24, 2020). "[U]nder New York law, an insurance company's claim handling activities are generally subject to discovery even if they were performed by an attorney. *Id.* This rule is grounded in an obvious principle: "The payment or rejection of claims is part of the regular business of an insurance company." *Advanced Chimney, Inc. v. Graziano*, 153 A.D.3d 478, 480, 60 N.Y.S.3d 210 (2d Dep't 2017). Thus, "[t]he key question is whether the attorney is predominantly investigating an insurance claim or providing legal advice." *Roc Nation*, 2020 WL 1970697, at *2 (quotation marks and citations omitted). This approach extends to evaluations of assertions of attorney-client privilege in the context of an insurance company's decision to rescind a policy based upon alleged material misrepresentations made by the insured in the procurement of the policy. *See Advanced Chimney,* 153 A.D.3d at 479-80.

Here, defendant attempts to draw a fine line between its handling of plaintiffs' claim and its evaluation of the rescission option. In the first place, defendant's proposition that it is "not in the business of rescinded policies" defies logic. Defendant is in the business of providing insurance coverage; it assesses risk (and determines whether or not to provide insurance) based

(at least in part) on a potential insured's application. That is precisely why policy rescissions are often based upon misrepresentations or false statements in insurance applications. Defendant's point – that it makes no money from rescinded policies – is facially true, but ignores situations (like the one at bar) where defendant rescinds a policy and avoids paying a substantial claim. In any event, in this case, defendant's decision to rescind plaintiffs' policy was inexorably intertwined with its denial of plaintiffs' claim. In other words, any advice from outside counsel related to rescission of plaintiffs' policy cannot be parsed from defendant's denial of plaintiffs' claim. Thus, defendant's communications with outside counsel were not *predominantly* of a legal nature and, therefore, are not protected by attorney-client privilege.[2] Accordingly, defendants shall produce all responsive communications with outside counsel between November 17, 2020 and January 19, 2021.

B. <u>Defendant's Proposed Amended Answer</u>

Defendant seeks leave to amend its Answer to assert an affirmative defense based on accord and satisfaction. Plaintiff opposes on the ground that the amendment would be futile.

Under Federal Rule of Civil Procedure ("FRCP") 15(a)(2), the Court "should freely give

---

[2] To the extent defendant relies on the work product privilege, it is unavailing. "[F]ederal law governs the applicability of the work product doctrine in all actions in federal court." *Weber v. Paduano*, No. 02 Civ. 3392, 2003 WL 161340, at *3 (Jan. 22, 2003). "The work product rule, set out in Federal Rule of Civil Procedure § 26(b)(3), shields from discovery those materials generated by counsel in anticipation of litigation." *Evanston Ins. Co. v. OEA, Inc.*, No. 02 Civ. 1505, 2006 WL 1192737, at *4 (S.D.N.Y. May 4, 2006). "Thus, documents that were prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation are not protected by the work product doctrine." *Weber*, 2003 WL 161340, at *3. Here, the communications at issue occurred prior to defendant's denial of plaintiffs' claim. Thus, the communications could not have been made in anticipation of litigation because no litigation could have been anticipated until plaintiffs' claim was denied. Accordingly, the communications are not protected work product.

leave [to amend] when justice so requires."  Notwithstanding this ordinarily lenient standard, the "denial of leave to amend has long been held proper" for reasons such as "undue delay, bad faith, dilatory motive, and futility."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

However, "if the motion [to amend a pleading] is filed after the deadline imposed by the district court in its scheduling order," the movant must show "good cause" for its failure to timely amend.  *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) (citing FRCP 16(b)(4)).  "Whether good cause exists turns on the diligence of the moving party."  *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quotation marks and citation omitted).  Thus, in order to demonstrate good cause, defendant must demonstrate that, "despite [its] having exercised diligence, the applicable deadline could not have been reasonably met."  *Saloman v. Adderley Indus., Inc.*, 960 F. Supp.2d 502, 507 (S.D.N.Y. 2013).  "Conversely, a movant fails to satisfy this burden when the proposed amendment is based on information the party knew or should have known in advance of the applicable deadline."  *Id.*  If defendant demonstrates good cause under FRCP 16, the Rule 15 standard applies to determine whether leave to amend should be granted.  *Beckett v. Incorporated Village of Freeport*, No. 11 Civ. 2163, 2014 WL 1330557, at *5 (E.D.N.Y. Mar. 31, 2014).

Here, the Court set September 27, 2021 as the deadline for amended pleadings.  *See* Civil Case Discovery Plan and Scheduling Order, Dkt. #24.  Although certain discovery deadlines were subsequently extended, the deadline for amended pleadings was not.  *See* Revised Civil Case Discovery Plan and Scheduling Order, Dkt. #31; 2d Revised Civil Case Discovery Plan and

Scheduling Order, Dkt. #34.  Because defendant's application is clearly untimely, defendant must demonstrate good cause for its failure to propose the amendment within the court's deadline.  Defendant's written submissions do not address FRCP 16's "good cause" requirement.  I broached the issue during the February 2d conference; in response, defense counsel candidly admitted that the decision to seek amendment was based upon review and reconsideration of facts known much earlier.  Thus, defendant fails to demonstrate good cause for its failure to seek leave to amend by the deadline imposed by the court.  Accordingly, defendant's application for leave to amend its Answer is **DENIED**.[3]

Dated:  February 4, 2022  
       White Plains, New York

**SO ORDERED.**

_____  
PAUL E. DAVISON, U.S.M.J.

---

[3] A Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) is not required because denial of defendant's motion to amend is not dispositive of any existing claims.  See Jean-Laurent v. Wilkerson, 461 F.App'x 18, 25-26 (2d Cir. 2012) (Report and Recommendation required where Magistrate Judge granted plaintiff's motion to file a second amended complaint to the extent it did not contain any state law claims, which amounted to dismissal of plaintiff's existing state law claims that had survived a motion to dismiss); see also, e.g., Erdogan v. Nassau County, No. 10-CV-05837, 2014 WL 1236679, at *1 (E.D.N.Y. Mar. 25, 2014) (Memorandum and Order denying plaintiff's motion to amend the complaint to add two additional defendants); In re Mission Constr. Litig., Nos. 10 Civ. 4262, 10 Civ. 9344, 11 Civ. 1565, 2013 WL 4710377, at *1 (S.D.N.Y. Aug. 30, 2013) (Opinion and Order denying motion to join a defendant and file a second amended complaint).

    Because defendant's application is denied pursuant to FRCP 16, I decline to reach plaintiff's argument concerning futility of the proposed amendment.